IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHARLENE R. SMOOT,                    )
                                      )
              Plaintiff,              )
                                      )    CIVIL ACTION
v.                                    )
                                      )    No. 05-4075-SAC-JTR
JO ANNE B. BARNHART,                  )
Commissioner of Social Security,      )
                                      )
              Defendant.              )
_____       )


REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and the case be REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) as discussed below.

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and upon reconsideration.  (R. 15, 42, 43, 434,

435).  Plaintiff requested and received a hearing before an Administrative Law Judge (ALJ) on Sept. 9, 2004, at which she was represented by counsel.  (R. 15, 57, 26-41).  At the hearing, plaintiff appeared and testified, as did a vocational expert.  (R. 15, 26, 27).  On Nov. 23, 2004, the ALJ filed a decision in which he found that plaintiff cannot perform her past relevant work but is able to make a successful adjustment to work that exists in significant numbers in the national economy.  (R. 15-25).  Consequently, he found that plaintiff is not disabled within the meaning of the Act, and denied her applications.  (R. 25).

Plaintiff sought review by the Appeals Council which was denied.  (R. 7-11).  Consequently the ALJ's decision is the final decision of the Commissioner.  (R. 7); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied

the correct legal standard.  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work

experience, engage in any other substantial gainful work existing in the national economy.   Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.   20 C.F.R. §§ 404.1520, 416.920 (2004); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.   "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."   Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).   Id. at 750-51.   Before evaluating step four, the Commissioner assesses claimant's RFC.   20 C.F.R. §§ 404.1520, 416.920.   This assessment is used at both step four and step five of the process.   Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy.   Williams, 844

-4-

F.2d at 751.  In steps one through four the burden is on
claimant to prove a disability that prevents performance of
past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184
(10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step
five, the burden shifts to the Commissioner to show other jobs
in the national economy within plaintiff's capacity.  Id.;
Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims error in evaluating the medical
opinions, in evaluating plaintiff's mental impairments, in
failing to discuss the Third Party Activity Questionnaire
completed by her mother, and in evaluating the credibility of
plaintiff's allegations of symptoms.  The Commissioner argues
that the ALJ properly applied the sequential evaluation
process, and substantial evidence in the record supports his
decision.  The court addresses the ALJ's evaluation of the
medical opinions.

## III.    Medical Opinions

Plaintiff claims the ALJ erred in rejecting the opinion
of Dr. Montano, and in "failing to assign appropriate weight"
to the opinion of consultant Dr. McKenna.  (Pl. Br., 17-21).
The Commissioner argues that the ALJ properly evaluated the
opinions of both Dr. Montano and Dr. McKenna and accorded them
appropriate weight.

-5-

### A.   Standard to Evaluate Medical Source Opinions

"Medical opinions" are defined as "statements from physicians and psychologists or other <u>acceptable medical sources</u> that reflect judgments about the nature and severity of [plaintiff's] impairment(s), including [plaintiff's] symptoms, diagnosis and prognosis, what [plaintiff] can still do despite impairment(s), and [plaintiff's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2) (emphasis added). Plaintiff's own physician, psychologist, or other "acceptable medical source" is considered a "treating source."  <u>Id.</u> § 404.1502.  "Acceptable medical sources" as defined in the regulations include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  <u>Id.</u>, § 404.1513(a)(2).  The regulations provide that the Commissioner may use evidence from "other medical sources" such as nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists, not on the list of "acceptable medical sources" to show the severity of plaintiff's impairments and how they affect his ability to work.  20 C.F.R. § 404.1513(d).  Because "other medical sources" are not "acceptable medical sources," they do

-6-

not meet the definition of "treating sources," and their opinions do not qualify as "medical opinions."

"Medical opinions" may not be ignored and will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. § 404.1527(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2005).  A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of examining physicians are generally given more weight than the opinions of physicians who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [plaintiff's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2005).  If the treating source opinion is not given controlling weight, the inquiry does not end.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the

-8-

opinion.  Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also

Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)

(citing Goatcher v. Dep't of Health & Human Serv., 52 F.3d

288, 290 (10th Cir. 1995)).

     Considering the factors, the Commissioner must give

reasons for the weight given a treating source opinion.  Id.

350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion

completely, he must then give 'specific, legitimate reasons'

for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972,

976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513

(10th Cir. 1987)).

     **B.   Dr. Montano's Opinion**

     The record contains a "Mental Impairment Questionnaire

(RFC and Listings)" accompanied by a letter from plaintiff's

attorney and submitted at the hearing.  (R. 388-94).  The

questionnaire was signed and dated on Sept. 3, 2004 by

plaintiff's therapist, Holly Robertson, LSCSW.  (R. 394).  On

the last page, just below Ms. Robertson's printed name and

address is an illegible signature followed by the letters

"M.D."  Id.  The letter from plaintiff's attorney states the

questionnaire is "signed by David Montano, M.D."  (R. 388).

Armed with this information, one would conclude that the

signature below Ms. Robertson's address is that of Dr. Montano

as it appears to have a capital "M" at the beginning, a "t" approximately in the middle, and generally conforms in shape to the word "Montano." (R. 394). What might be a stylized "D" is superimposed on the "Montano" and appears to "cross" the "t." Id. The questionnaire does not contain a printed or typed signature block for the physician whose signature appears. The court notes that the record contains a hospital discharge summary dated Jul. 14, 1994 which is signed by "David Montano, MD," and the signature on that record appears to be the same as the one appearing on the questionnaire below the address of Ms. Robertson. (R. 237). It is obvious to even the most casual observer that the handwritten portions of the questionnaire were completed by the same person who signed Ms Robertson's name and printed her name and address. (R. 389-94).

The ALJ "considered the September 2004 opinion of Holly Robertson." (R. 18) (citing Ex. 12F-153 (R. 394)). He noted that Ms. Robertson opined "that the claimant's mental status had improved slightly from a year ago," and that plaintiff basically met a medical listing. Id. He stated,

> It is noteworthy that a Dr. Montano 'signed off' on the evaluation by Ms. Robertson but obviously did not complete the evaluation himself. The records do not reflect any treatment or evaluation of the claimant by Dr. Montano upon which he could reasonably rely upon [sic] to make such an

> evaluation.  Apparently he intended to indicate that
> he agreed with Ms Robertson's opinions, however
> there is nothing in the record to establish that his
> agreement is based upon anything other that [sic]
> his faith in Mrs. [sic] Robertson.

(R. 18-19).

In finding at step three that plaintiff's condition does

not meet a listing, the ALJ stated:

> No recognized treating source opines (except Dr.
> Montano as discussed above) that the claimant's
> impairments meet a medical listing, and a review of
> the medical evidence does not support a finding of
> listing level impairments.  As to Dr. Montano's
> indication of agreement with ms [sic] Robertson, a
> social worker, the undersigned does not give the
> opinion any weight, since there is nothing to
> support a finding that the Doctor has ever treated
> or evaluated the claimant.

(R. 20).

In summarizing his evaluation of medical opinions, the

ALJ discussed the opinion once again:

> The undersigned considered the opinions of Holly
> Robertson, a social worker and Dr. Montano, as
> documented in Exhibit 12F-153-158 [(R. 389-94)].
> Their opinions are not supported by the evidence and
> their own treatment notes as documented in Exhibit
> 11F [(R. 371-87)], and therefore are given little
> weight.  The record documents that the claimant's
> mental health improved in less than 12 months, which
> is documented in Exhibit 11F-135 [(R. 380)].  Dr.
> Montano's opinion is inconsistent with the
> claimant's activities and the evidence in its
> entirety.  The doctor does not provide medically
> acceptable clinical and diagnostic data to support
> his opinion, and in fact there is no evidence that
> he ever evaluated of [sic] treated the claimant.
> The record does not substantiate an on-going
> patient-doctor relationship between the claimant and

-11-

>Dr. Montano.  As previously indicated Ms. Robertson
>is not a recognized medical source.

(R. 22).

As quoted above, the decision reveals that the ALJ gave

Dr. Montano's opinion no weight because there is no evidence

Dr. Montano provided any treatment or examination of plaintiff

upon which the opinion could be based and there is no evidence

Dr. Montano reviewed any records or evaluation of any other

physician, psychologist, or medical source other than the

opinion prepared by Ms. Robertson.  This conclusion is

supported by substantial evidence in the record.  Plaintiff

points to no evidence that Dr. Montano examined or treated

plaintiff or reviewed the records of any medical source in

arriving at the opinions in the "Mental Impairment

Questionnaire" to which he affixed his signature.  The

questionnaire does not cite to any medical records, testing or

other basis for the opinions contained therein.

The record reveals that plaintiff was voluntarily

admitted to the Topeka State Hospital on May 2, 1994 after

several suicide attempts.  (R. 236).  After about a month and

a half, plaintiff requested to be released in order to take

care of her children because her ex-husband had entered a

substance abuse program.  (R. 237).  Plaintiff was discharged

to her home on Jun. 15, 1994.  Id.  Her condition on discharge

was described as improved, and the records indicate no dangerousness to others or to self.  (R. 235).  A Dr. David Montano signed the "Discharge Summary" regarding this hospital stay, and the signature appears to be the same as that affixed to Ms. Robertson's "Mental Impairment Questionnaire."

Plaintiff testified at the hearing:

Q    Did you see Dr. Matatono after you left the
     State Hospital?

A    I don't know if I've seen him at the State
     Hospital.

Q    When did you last see him?

A    Honestly I don't remember.

Q    Have you seen him in the last couple of years?

A    Not that I know of.

(R. 32).

Plaintiff later testified that she has no idea if this is the same "Dr. Matatono" (R. 34), that Holly Robertson is her therapist; id.; and that she thought "Dr. Matatono" was "kind of in charge of the case" presently.  (R. 33).  Plaintiff's testimony provides no basis to assume Dr. Montano examined or treated plaintiff or reviewed any medical records which form the basis for his opinion.

Although Dr. Montano might have been involved in the 1994 treatment, that provides no basis for the physician's opinion

in Sept. 2004, more than ten years later.  There is no
evidence in the record of any contact between plaintiff and
this physician in the intervening years.  Moreover, plaintiff
performed substantial gainful activity during the intervening
period (R. 102), and alleges that her disability began Mar. 1,
2003.  Therefore, her condition in the interim cannot be found
disabling.

Because the administrative record contains treatment
records from Ms. Robertson, one can properly conclude that the
opinions in the questionnaire are based, at least in general,
upon the treatment revealed in Ms. Robertson's treatment
records.  However, as the ALJ concluded, there is no evidence
in the record that Dr. Montano even reviewed Ms. Robertson's
treatment records before affixing his signature to the
questionnaire.  As the ALJ noted, there is nothing in the
record to establish that Dr. Montano's agreement with the
opinion is based upon anything other than his faith in Ms.
Robertson.

Plaintiff argues that the ALJ is "assuming Dr. Montano
relied exclusively upon the opinions of Ms. Robertson," and
therefore, erred in failing to consider that Dr. Montano "very
well may have also relied on the contemporaneous treatment

findings of Dr. Okono,[1] [sic] treating psychiatrist at Valeo."
(Pl. Br., 18).  Plaintiff's argument is without merit.  The
ALJ made a reasonable conclusion supported by the record
evidence--that Dr. Montano's adoption of Ms. Robertson's
opinions is based solely upon the physician's faith in Ms.
Robertson.  (R. 19).  Although Dr. Okano treated plaintiff at
Valeo, there is no indication in the record that Dr. Montano
considered anything other than the questionnaire.  Were the
ALJ to evaluate Dr. Montano's opinion in light of Dr. Okano's
treatment notes, he would be assuming that Dr. Montano
considered Dr. Okano's treatment notes in forming his opinions
and deciding to sign the questionnaire.  That assumption would
constitute error because it is without any support in the
record evidence.

     Plaintiff argues that although the ALJ rejected Dr.
Montano's opinion because Dr. Montano never treated plaintiff,
the ALJ gave the State Agency physicians' opinions "moderate
weight" even though those physicians did not treat or examine
plaintiff.  Again, plaintiff's argument is without merit.  The
difference in consideration of the physicians' opinions is
revealed in the ALJ's decision.  He rejected Dr. Montano's

---

     [1]Dr. Okano treated plaintiff at Valeo between Jul. 2003,
and Jan. 2004.  (R. 239, 242, 246, 251, 253).

-15-

opinion because although Dr. Montano "intended to indicate that he agreed with Ms. Robertson's opinions, [ ] there is nothing in the record to establish that his agreement is based on anything other tha[n] his faith in M[]s. Robertson." (R. 19).  The opinions of the state agency physicians, on the other hand, each state the rationale for that opinion and the evidence upon which the opinion is based.  (R. 301-02, 310, 327-28, 332).  The court finds no error in the evaluation of Dr. Montano's opinion.

### C.   Dr. McKenna's Opinion

Plaintiff claims three bases of error in evaluating Dr. McKenna's opinion.  (1) The ALJ should have contacted Dr. McKenna to resolve any conflict in the opinion, (2) the inconsistencies in the opinion alleged by the ALJ do not exist, and (3) although the ALJ found significant improvement in plaintiff's condition after Dr. McKenna examined the plaintiff, that alleged improvement is not supported by the record.  (Pl. Br., 21).  The Commissioner argues that inconsistencies in the physician's opinion do not require the ALJ to recontact the physician, and the ALJ's findings regarding inconsistencies and improvement are supported by substantial evidence in the record.

Because the court finds that the inconsistencies in Dr. McKenna's opinion and the improvement in plaintiff's mental status as found by the ALJ are not supported by substantial evidence in the record, the court recommends that the case be remanded for proper consideration of Dr. McKenna's opinion.

The ALJ considered Dr. McKenna's report and noted the psychologist's opinion that plaintiff is not able to maintain pace and persistence in the performance of simple, routine, and tangible tasks because of her depression. (R. 17-18).[2] The ALJ decided not to give Dr. McKenna's opinion significant weight, in part, because he found the opinion internally inconsistent. (R. 22). He analyzed the inconsistencies as follows:

> The doctor indicates that the claimant is not able to maintain pace and persistence in the performance of simple, routine, intangible tasks because of her depression. He opined that the claimant's attention, concentration and persistence appeared limited due to her depression. However, the doctor opined that the claimant is capable of communicating, comprehending and retaining simple directions at an unskilled competitive work

---

[2]The ALJ erred in stating Dr. McKenna's opinion. The psychologist stated plaintiff "is not able to maintain pace and persistence in the performance of simple, routine, and tangible tasks," (R. 279) (emphasis added) whereas the ALJ stated the psychologist's opinion that plaintiff could not "maintain pace and persistence in the performance of simple, routine, intangible tasks." (R. 22) (emphasis added). Because it does not affect the substance of the decision, the court finds this is a typographical error.

> situation, and that the claimant can understand,
> retain, and follow simple one and two step
> instructions.  The doctor even gave the opinion that
> the claimant could understand and follow simple
> verbal instructions, and understands and follows
> complex verbal and written instructions.

(R. 22).

The court finds no reasonable basis upon which to find inconsistency in the opinions cited.  As the ALJ noted, Dr. McKenna found that plaintiff's attention, concentration and persistence are limited by depression.  These limitations affect plaintiff's abilities to communicate, understand or comprehend, retain, and follow, instructions.  Nonetheless, Dr. McKenna opined that plaintiff could <u>understand and follow</u> simple and complex, verbal and written instructions as stated by the ALJ.  Adding the ability to <u>retain</u> instructions, Dr. McKenna opined that plaintiff would only be able to understand, retain, and follow simple one and two step instructions and only in an unskilled competitive work situation.  However, although the psychologist found that plaintiff could understand and follow complex verbal or written instructions and could retain, understand, and follow simple one, and two-step instructions in an unskilled work situation, he found that she would not be able to maintain <u>pace and persistence</u> in performing even simple, routine, and tangible tasks.  (R. 279).

The abilities addressed by the psychologist all relate to attention, concentration, and persistence.  The psychologist opined that plaintiff is limited in each of these three areas, he explained the degrees of limitation in his opinion, and included in his opinion that plaintiff is unable to maintain pace and persistence even in the performance of simple, routine, and tangible tasks.  As Dr. McKenna opined, inability to maintain pace and persistence even at simple, routine, tangible tasks is not inconsistent with the ability to communicate, comprehend, and follow complex verbal or written instructions, or to retain simple one and two-step instructions in an unskilled work situation.  The ability to understand something and to do it is not inconsistent with an inability to maintain a pace while doing the thing or to persist in the doing of the thing.  Therefore, the evidence does not support the ALJ's finding of inconsistencies in Dr. McKenna's opinions and remand is necessary to properly evaluate the psychologist's opinions.

The court cannot understand the ALJ's reasoning (in discounting Dr. McKenna's opinions) that claimant's mental impairments do not meet the duration requirement.  The ALJ discussed this reason for discounting Dr. McKenna's opinions:

> The record documents that the claimant's mental impairments do not meet the duration requirements.

On February 20, 2004, it is documented that the
claimant's major depressive disorder was in partial
remission, and her mental health status had
improved. (Exhibit 11F-143 [(R. 372)]) The record
documents that with medication, the claimant's
depressive symptoms had improved. (Exhibit 11F-135
[(R. 380)])

(R. 22).

Assuming the ALJ is correct in stating that claimant's
mental impairments do not meet the duration requirement,[3] it
is not clear what significance that finding has on the weight
to be accorded to Dr. McKenna's opinions.  The Commissioner
argues, "medical findings that are inconsistent with Dr.
McKenna's opinion provide ample reason for the ALJ to discount
that opinion." (Comm'r Br., 7).  Dr. McKenna opined that
plaintiff is unable to maintain pace and persistence in the
performance of simple, routine, tangible tasks.  Dr. McKenna
did not opine that plaintiff's inability had persisted for
twelve or more months or would result in death in less than a
year.  The weight to be afforded Dr. McKenna's opinion is
independent of the ALJ's determination whether plaintiff's
condition meets the duration requirement.

---

[3]The court notes that neither in his step two or step
three discussion, nor in his listing of findings did the ALJ
make a finding that plaintiff's mental impairments do not meet
the duration requirement.

Plaintiff in her brief assumes the ALJ found Dr. McKenna's report did not reflect that plaintiff's condition had improved thereafter, thereby providing a basis to reject the psychologist's opinions. (Pl. Br., 21). Plaintiff's assumption recognizes that Dr. McKenna's report is based upon a Sept. 2, 2003 evaluation of plaintiff, and the ALJ found plaintiff's condition was in partial remission and her mental health status had improved by Feb. 20, 2004. Plaintiff argues, however, that the record does not establish improvement as found by the ALJ.

As the ALJ noted, Ex. 11F-135 (R. 380) provides evidence that plaintiff's depression had improved with an increased dose of Zoloft. (R. 17, 22). Ex. 11F-143 establishes that plaintiff was diagnosed, on Axis I, with "Major Depressive Disorder, Recurrent, in partial remission." (R. 372). However, that diagnosis was made on Apr. 3, 2003, not Feb. 20, 2004 as stated by the ALJ. Id. That record reveals on Feb. 20, 2004 the Axis II diagnosis was changed from "Deferred" to "No Diagnosis," the Axis I diagnosis was not changed. Id. Furthermore, neither that record nor any of the records cited by the ALJ for improvement of symptoms make mention that plaintiff's "mental health status had improved" as stated by the ALJ. (R. 22, 372, 380, 382, 384) (emphasis added). A

-21-

GAF[4] score of 48 was assigned on plaintiff's initial
assessment at Valeo in Apr. 2003 (R. 372) and, as noted by
plaintiff, subsequent GAF scores were assessed at 42 on Feb.
20, 2004, and 46 on Aug. 12, and Sept. 11, 2004.  (Pl. Br.,
32) (citing R. 389, 380); see also, (R. 384).  Moreover, Dr.
McKenna assigned a GAF score of 50, the highest GAF score
found in this record, and opined that plaintiff is unable to
maintain pace and persistence in the performance of simple,
routine, tangible tasks.  (R. 279).  Thus, substantial
evidence in the record does not support the ALJ finding that
plaintiff's mental health status has improved or that Dr.
McKenna's opinions should not be given substantial weight.
Remand is necessary for the Commissioner to properly evaluate
Dr. McKenna's opinions.

Having found it necessary to remand this case for the
Commissioner to evaluate Dr. McKenna's opinions, the court

---

[4]Global Assessment of Functioning.  A GAF score is a
subjective determination which represents "the clinician's
judgment of the individual's overall level of functioning."
Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of
Mental Disorders (DSM-IV) 30 (4th ed. 1994).  The GAF Scale
ranges from 100 (superior functioning) to 1 (persistent danger
of severely hurting self or others, persistent inability to
maintain minimal personal hygiene, or serious suicidal act
with clear expectation of death).  Id. at 32.  GAF is a
classification system providing objective evidence of a degree
of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826,
835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F.
Supp. 869, 886, n.13 (N.D. Ill. 1998)).

need not address plaintiff's claims regarding evaluation of her mental impairments, the third party questionnaire completed by her mother, or the ALJ's credibility determination.  Plaintiff may address these issues to the Commissioner on remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and the case be REMANDED under 42 U.S.C. § 405(g), sentence four, for proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.  Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated March 24, 2006, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**